1    Gregory L. Lippetz (State Bar No. 154228)
     glippetz@jonesday.com
2    Laurie M. Charrington (State Bar No. 229679)
     lmcharrington@jonesday.com
3    JONES DAY
     1755 Embarcadero Road
4    Palo Alto, CA  94303
     Telephone:    650-739-3939
5    Facsimile:    650-739-3900

6    Attorneys for Movants
     ELANTEC SEMICONDUCTOR, INC. AND
7    INTERSIL CORPORATION

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   TECHNOLOGY LICENSING                 Case No. 2:03-cv-01329-WBS-EFB
     CORPORATION, a Nevada Corporation, and
12   AV TECHNOLOGIES, an Illinois Limited   **MEMORANDUM OF POINTS AND**
     Liability Company,                     **AUTHORITIES IN SUPPORT OF**
13                                          **ELANTEC SEMICONDUCTOR INC.**
                    Plaintiff,              **AND INTERSIL CORPORATION'S**
14                                          **MOTION TO INTERVENE FOR**
          v.                                **LIMITED PURPOSE OF STAYING THIS**
15                                          **ACTION, AND TO STAY ACTION**
     THOMSON, INC., a Delaware Corporation, **RELATING TO ELANTEC'S**
16                                          **PRODUCTS**
                    Defendant.
17
                                           Date:   February 1, 2010
18                                         Time:   2:00 p.m.
                                           Judge:  William B. Shubb
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. FACTUAL BACKGROUND...................................................................................2

    A.   The Movants ...........................................................................................2

    B.   The Instant Action & The Gennum Litigation.........................................3

    C.   Related Litigation Involving The Asserted Patents .................................4

        1.   The License Litigation ................................................................4

        2.   The Harris Litigation .................................................................4

        3.   The Declaratory Judgment Action..............................................5

II. INTERSIL AND ELANTEC ARE ENTITLED TO INTERVENE FOR THE LIMITED PURPOSE OF STAYING THIS LITIGATION REGARDING ACCUSED PRODUCTS USING ELANTEC CHIPS...................................................7

    A.   Intervention Under Federal Rule of Civil Procedure 24 .........................7

    B.   Elantec and Intersil Have A Right To Intervene.....................................7

        1.   Movants' motion is timely ..........................................................7

        2.   Movants have a compelling interest in staying this action ..........8

        3.   This action may impair Movants' ability to protect their interests.............8

        4.   Thomson cannot adequately protect Movants' interests.............9

III. THIS COURT SHOULD STAY LITIGATION REGARDING THOMSON PRODUCTS USING ELANTEC CHIPS UNDER THE COLORADO RIVER DOCTRINE ....................................................................................................10

    A.   Standard for a Stay Under the Colorado River Doctrine .......................11

    B.   The License Litigation And This Action Are Parallel Proceedings ......12

    C.   The Multi-Factor Balancing Test Weighs Heavily In Favor Of Staying This Action Pending Resolution Of The License Litigation ..........................13

        1.   A stay of this action avoids piecemeal litigation .....................13

        2.   The order in which jurisdiction was obtained favors a stay ......15

        3.   Controlling law and convenience of forum favors stay............15

        4.   Adequacy of state court favors stay .........................................15

IV. THE CUSTOMER-SUIT DOCTRINE PROVIDES ANOTHER INDEPENDENT BASIS TO STAY THIS ACTION ...................................................................16

    A.   Applicable Law Regarding The Customer-Suit Doctrine......................16

    B.   A Stay With Respect To Thomson Products Using Elantec Chips Advances Efficiency And Promotes Judicial Economy .........................................17

        1.   A stay promotes efficiency and avoids duplicative litigation....17

        2.   A stay promotes judicial economy..............................................18

    C.   Movants Are The Real Parties In Interest..............................................20

    D.   A Stay Will Not Prejudice TLC............................................................21

    E.   Availability And Convenience Of Witnesses And Parties Favors A Stay ...........22

1

**TABLE OF CONTENTS**
(continued)

2
                                                                    **Page**

3
V.        CONCLUSION.................................................................................................22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*American Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*,
  843 F.2d 1253 (9th Cir. 1988) ................................................................13, 14

*Cal. ex rel. Lockyer v. U.S.*,
  450 F.3d 436 (9th Cir. 2006) ...........................................................................7

*Calvert Fire Ins. Co. v. American Mut. Reins. Co.*,
  600 F.2d 1228 (7th Cir. 1979). ......................................................................11

*Card Activation Techs. v. Pier 1 Imps., Inc.*,
  No. 09 C 2021, 2009 WL 2956926 (N.D. Ill. Sept. 14, 2009) ....................17

*Clark v. Lacy*,
  376 F.3d 682 (7th Cir. 2004) ..........................................................11, 12, 15

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)..............................................................................*passim*

*Commissariat à l'Énergie Atomique v. Dell Computer Corp.*,
  No. Civ.A. 03-484-KAJ, 2004 WL 1554382 (D. Del. May 13, 2004)............2

*Continental Grain Co. v. Barge FBL-585*,
  364 U.S. 19 (1960)..........................................................................................18

*Deforest Radio Tel. & Tel. Co. v. United States*,
  273 U.S. 236 (1927)............................................................................5, 13, 17

*Delphi Corp. v. Auto. Techs. Int'l, Inc.*,
  No. 08-CV-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008)..............20

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ...........................................................................8

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993) .......................................................................17

*Gen-Probe, Inc. v. Amoco Corp.*,
  926 F. Supp. 948 (S.D. Cal. 1996)................................................................14

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
  No. Civ.A. 04-1337-KAJ, 2005 WL 2465898 (D. Del. May 18, 2005).....8, 9, 10, 20

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
  995 F.2d 1566 (Fed. Cir. 1993) .....................................................................13

*Intermedics Infusaid, Inc. v. Regents of Univ. of Minn.*,
  804 F.2d 129 (Fed. Cir. 1986) .................................................................11, 15

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
  109 F.3d 1567 (Fed. Cir. 1997) ..................................................................6, 14

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) .............................................................*passim*

*Kucala Enters., Ltd. v. Auto Wax Co.*,
  No. 02 C 1403, 2002 WL 1586415 (N.D. Ill. July 18, 2002) ......................18

*LaDuke v. Burlington N. R. Co.*,
  879 F.2d 1556 (7th Cir. 1989) .......................................................................12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936)................................................................12, 16

*LG Elecs. Inc. v. Q-Lity Computer Inc.*,
  211 F.R.D. 360 (N.D. Cal. 2002).................................................8

*Lumen Constr., Inc. v. Brant Constr. Co.*,
  780 F.2d 691 (7th Cir. 1985) .....................................................15

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)...................................................................10

*Medtronic, Inc. v. Cardiac Pacemakers, Inc.*,
  721 F.2d 1563 (Fed. Cir. 1983) .................................................17

*Morrow v. Vertical Doors Inc.*,
  No. CV 09-0256-PHX-DGC, 2009 WL 1698560 (D. Ariz. June 17, 2009) ..........19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)...................................................12, 14, 15, 16

*Nakash v. Marciano*,
  882 F. 2d 1411 (9th Cir. 1989) ............................................11, 13

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ....................................................7, 8

*One Up, Inc. v. Webcraft Techs., Inc.*,
  No. 87 C 3041, 1989 WL 118725 (N.D. Ill. Sept. 22, 1989) ..............11

*ProBatter Sports, LLC v. Joyner Techs., Inc.*,
  463 F. Supp. 2d 949 (N.D. Iowa 2006) .......................................18

*Profile Mfg., Inc. v. Kress*,
  No. 93-1569, 1994 WL 108059 (Fed. Cir. Mar. 30, 1994) ............11, 14

*Ricoh Co. v. Aeroflex Inc.*,
  279 F. Supp. 2d 554 (D. Del. 2003)..........................................19

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
  187 F.3d 1096 (9th Cir. 1999) ....................................................7

*Sierra Club v United States EPA*,
  995 F.2d 1478 (9th Cir. 1993) ....................................................7

*Sirna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.*,
  No. C-06-1361 MMC, 2006 U.S. Dist. LEXIS 90773 (N.D. Cal. Dec. 1, 2006)........11, 15

*SP Techs., LLC v. HTC Corp.*,
  No. 08 C 3760, 2009 WL 1285933 (N.D. Ill. May 6, 2009) ...............21

*Summa Four, Inc. v. AT&T Wireless Serv., Inc.*,
  994 F. Supp. 575 (D. Del. 1998)...........................................11, 16

*T.J. Smith & Nephew Ltd. v. Ferris Corp.*,
  No. 86 C 5461, 1987 WL 7496 (N.D. Ill. Mar. 2, 1987)..................21

*Targus Info. Corp. v. 800 Adept, Inc.*,
  No. 6:07-cv-1222-Orl-19DAB, 2007 WL 3306762 (M.D. Fla. Nov. 6, 2007) ..........20

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Technology Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008) ....................................................................4

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. Tex. Sys.*,
   458 F.3d 1335 (Fed. Cir. 2006) .............................................................8, 17

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972)......................................................................................9

*Ultra Prods., Inc. v. Best Buy Co.*,
   Civil Action No. 09-1095 (MLC), 2009 WL 2843888 (D.N.J. Sept. 1, 2009)..............17, 18, 21

*Whelen Techs., Inc. v. Mill Specialties, Inc.*,
   741 F. Supp. 715 (N.D. Ill. 1990) ..............................................................16

*Whistler Group, Inc. v. PNI Corp.*,
   No. Civ.A. 3:03-CV-1536-G, 2003 WL 22939214 (N.D. Tex. Dec. 5, 2003) ..........................19

*Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*,
   402 F. Supp. 2d 731 (E.D. Tex. 2005) ........................................................19

## Statutes

Fed. R. Civ. P. 24...............................................................................1, 7, 9

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24, Elantec Semiconductor Inc. ("Elantec") and Intersil Corporation ("Intersil") (collectively "Movants") move to intervene for the limited purpose of staying this action, and to stay this action under the *Colorado River* and customer-suit doctrines with respect to accused products that use Elantec's sync separator chips. Elantec researches, designs, and develops sync separator chips that Defendant Thomson, Inc. ("Thomson") purchases and incorporates into certain of its products which have been accused of infringing Plaintiffs Technology Licensing Corporation ("TLC") and AV Technologies' patents. The Elantec chips purchased by Thomson provide the functionality on which Plaintiffs base their infringement allegations. Because Movants and TLC are already engaged in multiple litigations involving the same patents, same sync separator chips, and nearly identical license, infringement, and invalidity issues as implicated in this action, Movants seek to intervene for the limited purpose of requesting a stay.[1]

First, this action should be stayed because a fundamental issue in this case—whether some or all of the accused products are licensed under the asserted patents—is the subject of a case currently pending in California Superior Court filed by Technology Licensing Corporation ("TLC") over three years ago (the "License Litigation"). Because resolution of the License Action will obviate all of the issues in this case relating to Elantec chips used by Thomson, a stay will avoid burdensome and duplicative litigation that may otherwise result in conflicting judgments.

Second, Movants have filed a declaratory judgment action in the Northern District of California alleging that such chips are non-infringing and the asserted patents are invalid ("the Declaratory Judgment Action"). Accordingly, a stay is proper under the customer suit doctrine "whereby litigation … brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). Movants possesses unique technical knowledge and expertise

---

[1] Movants seek to intervene only for the limited purpose of staying this action. If the Court declines to stay this action, Movants do not seek to intervene in or otherwise become a party to this action.

1  regarding the structure, function, and operation of its sync separator chips. "Because the

2  manufacturers are intimately involved in the design, operation, and use of the accused

3  [component], they are in the best position to contest invalidity and infringement of [the] asserted

4  patents." *Commissariat à l'Énergie Atomique v. Dell Computer Corp.*, No. Civ.A. 03-484-KAJ,

5  2004 WL 1554382, at *3 (D. Del. May 13, 2004).

6          Because resolution of any one of several issues in either of these litigations may render

7  this action moot with respect to Thomson products using Elantec chips, Movants respectfully

8  request that this Court stay this action pending resolution of these two parallel proceedings.

9          Thomson supports this motion. (Declaration of Laurie M. Charrington ("Charrington

10  Decl.") at ¶ 23.)

11  **I.    FACTUAL BACKGROUND**

12          **A.    The Movants**

13          Elantec researched, designed, and developed the sync separator chips that are used in

14  certain of Thomson's accused products and which form the basis for TLC's infringement

15  allegations regarding such products.

16          On March 25, 1999, Elantec and TLC, J. Carl Cooper ("Cooper"), and Pixel Instruments

17  Corporation ("Pixel") entered into a license agreement (the "Elantec License") granting Elantec a

18  license to U.S. Patents Nos. 5,486,869 ("'869 patent) and 5,754,250 ("'250 patent"), as well as

19  their reissues, which now includes U.S. Patent Nos. RE40,411E ("'411 patent")and RE40,412E

20  ("'412 patent,") (the '411 and '412 collectively referred to as the "Reissue Patents").[2]  The

21  Elantec License "authorize[s] Elantec ***and its customers*** and distributors to practice the

22  inventions covered by the U.S. Patent(s) that may be used in Elantec's products." (Elantec

23  License ¶ 2 (emphasis added).)[3]  In 2002, Intersil acquired Elantec. Since then, Elantec has

---

24          [2] Only the '250 and '869 patents are named in the operative complaint. However,
25  Movants understand that Plaintiffs intend to amend the complaint to replace the '250 and '869
    patents with the Reissue Patents. Movants use the term "Patents-in-suit" to refer to all four of the
26  asserted patents.

27          [3] The Elantec License contains a confidentiality provision which would require it to be
    filed under seal. Therefore, Movants have cited only those provisions of the Elantec License that
28  have previously been cited in public documents. If the Court so desires, Movants can separately
    file the entire document.

1   continued to sell sync separator chips as part of the Intersil family of companies, with Intersil

2   acting as its distributor.  The Elantec chips used by Thomson, and which are the subject of

3   Plaintiffs' claims, are covered by the Elantec License.  (Charrington Decl. at ¶ 22.)

4       Intersil and Elantec are currently involved in two litigations with TLC involving Elantec's

5   sync separator chips and the Patents-in-suit.  The License Litigation and Declaratory Judgment

6   Action overlap almost entirely with the issues to be litigated in this action pertaining to those

7   accused products that use Elantec chips.

8       **B.    The Instant Action & The Gennum Litigation**

9       On June 20, 2003, TLC and AV Technologies (collectively "Plaintiffs") filed a complaint

10   asserting that Thomson infringed U.S. Patent Nos. 4,573,070 ("the '070 patent"), 5,459,524 ("the

11   '524 patent"), the '869 patent, and the '250 patent.  (D.I. 1.)  On May 12, 2005, Plaintiffs filed an

12   amended complaint in which they alleged, among other things, that Thomson's Grass Valley

13   8900 FSS product (the "GV8900 product") infringed various claims of the '250 and '869 patents.

14   (D.I. 97 at ¶12.)[4]  The GV8900 is a video amplifier containing hundreds of different components.

15   Plaintiffs' pre-suit correspondence made clear that Thomson's alleged infringement hinges on the

16   incorporation and use of Elantec's sync separator chips in the GV8900 products.  (Charrington

17   Decl. at ¶ 21-22.)

18       On October 3, 2003, this Court stayed all proceedings concerning the '869 and '250

19   patents, pending resolution of litigation in the Northern District of California, Case No. 5:01-cv-

20   04204-RS, in which TLC asserted the same patents against Videotek Inc. and Gennum

21   Corporation ("the Gennum Litigation").  (D.I. 24.)  On June 1, 2004—shortly before trial in the

22   Gennum Litigation—TLC submitted the '869 and '250 patents for reissue proceedings before the

23   United States Patent and Trademark Office ("PTO").  On September 20, 2004, this Court stayed

24   all proceedings concerning the '869 and '250 patents pending resolution of the reissue

25   applications in the PTO.  (D.I. 50.)  Pursuant to that order, Plaintiffs were required to notify the

26   Court within ten days of the conclusion of the reissue proceedings.  (*Id.*)

27   _____

        [4]  On August 1, 2005 this Court entered a final judgment that Thomson did not infringe
    the claims of the '070 and '524 patents.  (D.I. 194.)  On May 22, 2006, this Court dismissed all
28   remaining claims and counterclaims relating to the '070 and '524 patents.  (D.I. 219.)

1    Judge Richard Seeborg presided over the Gennum Litigation, including consideration of

2    pre-trial motion practice, conducting a 6-day bench trial regarding infringement and invalidity of

3    the '250 and '869 patents, and review of extensive post-trial briefing.  On May 4, 2007, Judge

4    Seeborg issued a 43-page Order holding that Gennum's accused products did not infringe the

5    asserted claims of the '869 patent and that the asserted claims of the '250 patent were invalid.

6    (Charrington Decl., Ex. A.)  The Federal Circuit affirmed Judge Seeborg's holdings.  *See*

7    *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008).

8    On July 1, 2008, the PTO re-issued the '250 and '869 patents as the '411 and '412 patents,

9    respectively.  Plaintiffs, however, failed to comply with this Court's Order and never informed

10   the Court about the Reissue patents.  On September 11, 2009, given the uncertainty of this

11   pending litigation, Thomson informed the Court about the issuance of the Reissue patents.  (D.I.

12   221 at 3.)  On December 1, 2009, Plaintiffs identified the claims it will assert from the Reissue

13   patents.  Movants were recently made aware of the fact that the stay in this action had been lifted,

14   and that Plaintiffs intended to assert the Reissue patents against Thomson.

15       **C.     Related Litigation Involving The Asserted Patents**

16   While this action was stayed, TLC became involved in a number of other litigations

17   concerning the Patents-in-suit.

18              **1.     The License Litigation**

19   On June 9, 2006, Plaintiff TLC together with non-parties J. Carl Cooper, and Pixel

20   Instruments sued Movants in California Superior Court, Case No. 1-06-CV-065161-JK, for

21   breach of the Elantec License, alleging that Elantec violated the agreement by failing to properly

22   mark the licensed products, among other claims.  Movants assert that the Elantec License remains

23   valid and in effect.  Consequently, Movants maintain that they and their customers have at all

24   times been licensed to practice the Patents-in-suit.  The parties to the License Litigation have

25   conducted extensive written discovery, taken a number of the key depositions, and Movants

26   anticipate the case will be tried later in 2010.

27              **2.     The Harris Litigation**

28   On February 9, 2009, TLC filed an action in the Northern District of Illinois, Case No.

1   1:09-cv-00820, against Harris Corporation alleging that certain of Harris' products infringe the

2   Reissue Patents (the "Harris Litigation"). Like Thomson, Harris purchases sync separator chips

3   from Movants and then incorporates those chips into its own products. As in this case, TLC's

4   infringement allegations against Harris involved the functionality of Elantec's sync separator

5   chips used in Harris' products. Also, as in this case, the resolution of the License Litigation in

6   favor of Movants will moot TLC's infringement allegations against Harris.

7           Shortly after TLC sued Harris, Movants filed the Declaratory Judgment Action seeking a

8   judgment that their sync separator chips were licensed and that the Patents-in-suit are invalid and

9   unenforceable.

10          Harris moved to stay the Harris Litigation pending resolution of the License Litigation and

11  Declaratory Judgment Action. Before any discovery had occurred, the court granted Harris'

12  motion to stay and explained:

13          [T]he breach of license claims in the [License Litigation] and the license
            affirmative defense and counterclaim in the [Harris Litigation] hinge on the same
14          facts and legal principals. Additionally, because a license "constitute[s] a complete
            defense against a suit for infringement," *Deforest Radio Tel. & Tel. Co. v. United*
15          *States*, 273 U.S. 236, 241 (1927), litigating Harris' license defense will require the
            Court to apply California law to determine whether the Elantec License remains in
16          effect and whether the sync chips purchased by Harris are covered by the license.
            Absent a stay the parties and the Court will duplicate efforts and expend resources
17          and time litigating identical issues to those already pending in the [License
            Litigation], which was filed first.
18

19  (Charrington Decl., Ex. B at 2-3.) The court also held that the Declaratory Judgment Action

20  provided another, independent reason for staying the Harris Litigation under the customer-suit

21  doctrine, and explained that "[i]n patent infringement cases, stays are appropriate where the first

22  action is brought against the customer of an offending manufacturer and a subsequent action is

23  brought involving the manufacturer itself." (*Id.* at 3 (citation omitted).)

24          The Harris Litigation is currently stayed pending the outcome of the License Litigation

25  and the Declaratory Judgment Action.

26          **3.      The Declaratory Judgment Action**

27          On May 28, 2009, after learning that TLC had begun suing Movants' customers, Movants

28  filed the Declaratory Judgment Action against TLC, Cooper, and Pixel in the Northern District of

1    California.  In that litigation, Movants seek a declaration that: (1) Movants and their customers

2    are licensed to practice the Patents-in-suit by virtue of the Elantec License; (2) Elantec's sync

3    separator chips do not infringe the Patents-in-suit; (3) the Patents-in-suit are invalid;[5] and (4) the

4    Patents-in-suit are unenforceable due to inequitable conduct.  The Federal Circuit has instructed

5    that "in cases where a license is plead as a defense, or where the license defense is anticipated in

6    the complaint, … the most expeditious conduct of the trial would necessitate that the license issue

7    be resolved first, for if the license issue is resolved in the defendant's favor the infringement issue

8    is mooted." *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997)

9    (citation omitted).  Consequently, Movants have asked the court to stay the Declaratory Judgment

10   Action so that the License Litigation can be resolved first.[6]

11        The purpose of the Declaratory Judgment Action is for Movants to defend their products

12   and protect their customers from TLC's infringement allegations.  As Movants state in their

13   Complaint:

14              Over the last several years, [TLC] ha[s] sent numerous letters to
             [Movants'] customers charging that their use of certain of the
15            Accused Video Sync Separators infringe the '250 and '869 Patents.
             On information and belief, [TLC's] allegations of infringement are
16            based entirely on the operation/functionality of the Accused Video
             Sync Separators.  By its letters, [TLC] ha[s] engaged in a concerted
17            campaign of enforcement, threatening to assert or asserting the
             ['411 and '412] patents against [Movants'] customers based on
18            their purchase of the Accused Video Sync Separators and
             incorporation of the chips into the customer's own products.
19

20   (Charrington Decl., Ex. C at ¶17.)  The Declaratory Judgment Action is currently pending before

21   Judge Seeborg, who previously presided over the Gennum Litigation.

22

23

24

25        [5] Because the Elantec License may prevent Elantec from asserting invalidity except as a
     defense to a patent infringement action, only Intersil asserts a claim of invalidity.  The remaining
26   claims are brought by both Intersil and Elantec.

27        [6] In the Joint Case Management Statement recently filed by the parties in the Declaratory
     Judgment Action, Movants proposed the court stay the patent issues pending resolution of the
28   license issues.  (*See* Charrington Decl., Ex. S.)  Movants intend to formally move the Court for
     such an order.

## II.    INTERSIL AND ELANTEC ARE ENTITLED TO INTERVENE FOR THE LIMITED PURPOSE OF STAYING THIS LITIGATION REGARDING ACCUSED PRODUCTS USING ELANTEC CHIPS

### A.    Intervention Under Federal Rule of Civil Procedure 24

Federal Rule of Civil Procedure 24 allows intervention as of right and by the Court's permission. *See* Fed. R. Civ. P. 24(a)-(b). Intervention as of right is appropriate when the intervenor: (1) files a timely motion; (2) claims "a 'significantly protectable' interest relating to the property . . . which is the subject of the action"; (3) is situated such "that the disposition of the action may as a practical matter impair or impede its ability to protect that interest"; and (4) has an interest that will "be inadequately represented by the parties to the action." *Sierra Club v United States EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993). Permissive intervention is appropriate when the intervening party shows: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999). Courts construe Rule 24 "liberally in favor of potential intervenors." *Cal. ex rel. Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006). Movants satisfy the requirements for both types of intervention.

### B.    Elantec and Intersil Have A Right To Intervene

#### 1.    Movants' motion is timely

Whether a motion to intervene is timely depends on "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996). Movants' motion is indisputably timely. Movants recently learned that the stay in this action had been lifted, and, in the last few weeks, learned that Plaintiffs are asserting claims from the same Reissue patents that are the subject of both the License Litigation and the Declaratory Judgment Action. It is Movants' understanding that, in this action, only minimal written discovery has been served. Nor have any documents been produced, depositions been noticed, or any substantive motions of any sort been filed in this case. In such instances, no prejudice exists when a motion to intervene

1    "was filed before the district court made any substantive rulings." *Nw. Forest Res. Council*, 82

2    F.3d at 837.  Indeed, the absence of any prejudice is confirmed by the fact that Thomson—the

3    party that requested the previous stay be lifted—supports Movants' motion.

4            **2.**        **Movants have a compelling interest in staying this action**

5          "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as

6    many apparently concerned persons as is compatible with efficiency and due process." *Forest*

7    *Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995).  In patent

8    litigation, an intervenor has a compelling interest when the accused products incorporate

9    components designed by the intervenor.  *See, e.g., Tegic Commc'ns Corp. v. Bd. of Regents of*

10   *Univ. Tex. Sys.*, 458 F.3d 1335, 1344 (Fed. Cir. 2006) ("[T]o the extent that [the supplier's]

11   interests may be impaired by [customer] litigation, [the supplier] may seek to intervene in that

12   litigation.").

13         Here, Plaintiffs' infringement allegations against Thomson products using Elantec sync

14   separator chips hinge on the function and operation of those chips.  Further, any adverse findings

15   regarding Movants' chips in this case may negatively impact their relationships with, and sales to,

16   current and prospective customers.  In such circumstances, courts have found that an intervenor

17   has "sufficient interest in the litigation; indeed, as a manufacturer of the product component

18   which is at the heart of these cases, it has a compelling interest." *Honeywell Int'l Inc. v. Audiovox*

19   *Commc'ns Corp.*, No. Civ.A. 04-1337-KAJ, 2005 WL 2465898, at *4 (D. Del. May 18, 2005).

20   Likewise, a Northern District of California court explained:

21           As [the intervenor] sells the [components] that [the plaintiff] alleges
     infringe its patents, *there can be no question that [the intervenor]*

22   *has a legally protectable interest in the products that [plaintiff]*
     *seeks to place at issue in this patent infringement action*.  An

23   applicant demonstrates a significantly protectable interest when the
     injunctive relief sought by the plaintiffs *will have direct,*

24   *immediate, and harmful effects upon its legally protectable*
     *interests.*

25

26   *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 365 (N.D. Cal. 2002).

27           **3.**        **This action may impair Movants' ability to protect their interests**

28         "If an absentee would be substantially affected in a practical sense by the determination

1   made in an action, he should . . . be entitled to intervene." Fed. R. Civ. P. 24, Advisory

2   Committee Notes, 1966 Amendment.  This applies with special force to patent litigation where a

3   supplier has a strong interest in being heard on non-infringement, validity, and claim construction

4   issues when liability of accused products will turn on the functionality of the Movants'

5   components. *See Honeywell*, 2005 WL 2465898, at *4 (granting motion to intervene and

6   explaining that a manufacturer's interests "will be impaired or affected, as a practical matter, by

7   the disposition of the action, unless it is involved in the case directly and able to make its

8   positions [on validity and infringement] known").

9       Moreover, even though the outcome of this litigation will have no preclusive effect on

10   Movants, as a practical matter, Movants' business relationship with their customers may be

11   severely impaired if this litigation results in a finding that Thomson products using Elantec sync

12   separator chips infringe the Patents-in-suit.  As the Federal Circuit has recognized, "it is a simple

13   fact of life that a manufacturer must protect its customers, ***either as a matter of . . . good***

14   ***business, or in order to avoid the damaging impact*** of an adverse ruling against its products."

15   *Katz*, 909 F.2d at 1464 (citation omitted).

16       **4.**    **Thomson cannot adequately protect Movants' interests**

17       Addressing the inadequate representation factor, the Supreme Court has stated that "the

18   burden of making that showing should be treated *as minimal*." *Trbovich v. United Mine Workers*

19   *of Am.*, 404 U.S. 528, 538 n.10 (1972).  Movants easily satisfy this factor.  To begin with, as the

20   designer and supplier of the sync separator chips, Elantec is presumed to have greater interest

21   than its customers in defending a patent infringement action involving their chips.  For example,

22   Thomson may have alternatives to using the Elantec sync separator chips in its products and,

23   therefore, may not have as strong an interest as Movants in obtaining a judgment of non-

24   infringement or invalidity.  Further, while Thomson's interest in defending this action is

25   proportional to the fraction of its products that incorporate the sync separator chips, Movants'

26   interest is far greater because their interest extends to all sync separator chips they have sold to

27   their entire customer base.

28       In addition, Movants are uniquely situated to defend their sync separator chips against

1    Plaintiffs' infringement claims.  As the developer and designer of the components that give rise to

2    Plaintiffs' allegations, Elantec is immersed in the disputed technology and has the deepest and

3    most expansive understanding of the structure, function, and operation of the chips.  Movants also

4    possess the most relevant information about these chips, including relevant documentation and

5    access to engineers that designed the chips.  By contrast, Thomson did not design the sync

6    separator chips and lacks the same understanding of how those chips work.  Courts have

7    uniformly allowed a supplier to intervene because it "is uniquely situated to understand and

8    defend its own product, [and] its interests are not adequately represented by existing parties [i.e.,

9    customers] to the litigation."  *Honeywell*, 2005 WL 2465898, at *4.

10        In short, given that Movants filed the Declaratory Judgment Action to adjudicate whether

11    their sync separator chips are non-infringing, this Court should allow Movants to intervene in this

12    action for the limited purpose of staying duplicative litigation relating to those very same chips.

13        If the Court finds that Movants are not entitled to intervene as of right, Movants satisfy the

14    more liberal standard for permissive intervention.  As explained above, Movants' motion is

15    timely and its claims in the Declaratory Judgment Action and Thomson's defenses in this action

16    share common questions of law and fact.  Also, Movants' motion clearly presents an independent

17    ground for jurisdiction given the Declaratory Judgment Action.  *See MedImmune, Inc. v.*

18    *Genentech, Inc.*, 549 U.S. 118, 127 (2007) (holding jurisdiction exists when "the facts alleged,

19    under all the circumstances, show that there is a substantial controversy, between parties having

20    adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

21    declaratory judgment").

22    **III.    THIS COURT SHOULD STAY LITIGATION REGARDING THOMSON**
         **PRODUCTS USING ELANTEC CHIPS UNDER THE *COLORADO RIVER***
23       **DOCTRINE**

24        The Elantec License, if found to be valid in the state License Action, provides a complete

25    defense to Plaintiffs' claims against Thomson products using Elantec chips.  Rather than wasting

26    the parties' and the Court's resources litigating issues of infringement and validity related to these

27    products, the Court should stay this case pending the outcome of the License Action.  Only if

28    TLC were successful in its attempted cancellation of the Elantec License would there be a need to

1    proceed with Plaintiffs' claims in this action.

2        A.    **Standard for a Stay Under the *Colorado River* Doctrine**

3        Under the "wise judicial administration doctrine," courts have discretion to stay a federal

4    action during pendency of a related state court action by "giving regard to conservation of judicial

5    resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist.*

6    *v. United States*, 424 U.S. 800, 817 (1976) (citation omitted). Though staying a federal action in

7    favor of a state action is an exception, the Federal Circuit and district courts frequently apply the

8    *Colorado River* doctrine to stay a patent action pending resolution of a state court action whose

9    outcome could significantly streamline the patent action. *See, e.g.*, *Profile Mfg., Inc. v. Kress*,

10   No. 93-1569, 1994 WL 108059, at *3 (Fed. Cir. Mar. 30, 1994) (affirming stay of patent action

11   pending resolution of state action involving licensing and ownership issues); *Intermedics*

12   *Infusaid, Inc. v. Regents of Univ. of Minn.*, 804 F.2d 129, 135 (Fed. Cir. 1986) (applying

13   *Colorado River* analysis to affirm stay of patent action); *Summa Four, Inc. v. AT&T Wireless*

14   *Serv., Inc.*, 994 F. Supp. 575, 577 (D. Del. 1998) (same); *One Up, Inc. v. Webcraft Techs., Inc.*,

15   No. 87 C 3041, 1989 WL 118725, at *4-6 (N.D. Ill. Sept. 22, 1989) (granting stay of patent cross-

16   claim in light of earlier-filed state action concerning ownership).

17       Applying the *Colorado River* doctrine is a two-step process. First, the court must

18   determine whether the federal and state proceedings are parallel; then, the court applies a multi-

19   factor balancing test. *See Sirna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.*, No. C-06-

20   1361 MMC, 2006 U.S. Dist. LEXIS 90773, at *25 (N.D. Cal. Dec. 1, 2006); *Clark v. Lacy*, 376

21   F.3d 682, 685 (7th Cir. 2004). As to the first step, "it is enough if the two proceedings are

22   'substantially similar.'" *Nakash v. Marciano*, 882 F. 2d 1411, 1416 (9th Cir. 1989). Other courts

23   have held that proceedings are parallel "when substantially the same parties are

24   contemporaneously litigating substantially the same issues in another forum." *Calvert Fire Ins.*

25   *Co. v. American Mut. Reins. Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979).

26       In the second step, courts consider the following factors: (1) avoidance of piecemeal

27   litigation; (2) order in which jurisdiction was obtained; (3) the controlling law; (4) adequacy of

28   the state court proceeding to protect the parties' rights; (5) convenience of the federal and state

1  forums; (6) jurisdiction over property; (7) relative progress of state and federal actions; (8)

2  presence of concurrent jurisdiction; (9) availability of removal; and (10) contrived nature of the

3  federal claim. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983);

4  Clark, 376 F.3d at 685.

5      **B.    The License Litigation And This Action Are Parallel Proceedings**

6          Federal and state actions need not be identical to constitute parallel proceedings. *See*

7  *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Rather, two suits are parallel when (1)

8  "substantially the same parties" are (2) "contemporaneously litigating substantially the same

9  issues in another forum." *LaDuke v. Burlington N. R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989).

10  This case satisfies both requirements.

11          First, the License Litigation and this case involve substantially the same parties. TLC is a

12  party in both cases. Although Thomson is not a party to the License Litigation, Thomson, Intersil

13  and Elantec have a common interest in the outcome of the License Litigation—they want the

14  Elantec License be held valid such that the Elantec chips, and Thomson products incorporating

15  those chips, are covered by the license.

16          Second, the License Litigation and this case share an identical threshold issue—whether

17  there is a valid license to the Elantec chips. Both cases involve the same factual and legal issues

18  centering on whether the Elantec License continues to "authorize[e] Elantec and its customers and

19  distributors to practice the inventions covered by [the asserted patents]." (Elantec License at 2.)

20          In the License Litigation, TLC alleges that "Elantec breached its obligations under the

21  License Agreement," (Charrington Decl., Ex. D at ¶27), and that "[n]one of [Elantec's] products

22  could properly be identified as 'manufactured under license, U.S. Patents 5,486,869; 5,754,250'

23  after August 9, 2002 because the License Agreement has been terminated." (*Id.* at ¶¶21-23.) In

24  this case, a key issue will be whether Thomson, as a user of the Elantec chips, is licensed under

25  the Elantec License. Indeed, Thomson's Third Affirmative Defense states: "On information and

26  belief, any Elantec chips used by Thomson were licensed under the '869 and '250 Patents." (D.I.

27  99.) If Thomson is licensed to practice the Patents-in-suit under the Elantec License, and the

28  Elantec License is held to be valid in the License Action, then Plaintiffs' infringement claims

1    based on Thomson's use of Elantec products cannot stand.[7]

2    **C.    The Multi-Factor Balancing Test Weighs Heavily In Favor Of Staying This**

3    **Action Pending Resolution Of The License Litigation**

4    "No one factor is necessarily determinative" when applying the balancing test. *Colorado*

5    *River*, 424 U.S. at 818. Rather, "[t]hese factors are to be applied in a pragmatic and flexible way,

6    as part of a balancing process rather than as a 'mechanical checklist'." *Nakash*, 882 F.2d. at 1415

7    (citation omitted).

8    **1.    A stay of this action avoids piecemeal litigation**

9    "Piecemeal litigation occurs when different tribunals consider the same issue, thereby

10   duplicating efforts and possibly reaching different results." *American Int'l Underwriters*

11   *(Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). That is precisely the

12   scenario that will unfold in this case absent a stay.

13   The breach of license claims in the License Litigation and Thomson's Third Affirmative

14   Defense in this case hinge on the same facts and will be resolved based on the same evidence

15   measured against the same legal principles. Because a license "constitute[s] a complete defense

16   against a suit for infringement," *DeForest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236,

17   242 (1927), litigating Thomson's license defense will require this Court to apply California

18   contract law to determine whether the Elantec License remains in effect and whether the sync

19   chips purchased by Thomson are covered by the license. These are the same issues currently

20   pending before the California state court. Absent a stay, the parties and the Court will needlessly

21   duplicate the efforts undertaken in the state court action by: (1) producing similar documents; (2)

22   serving and responding to similar discovery; (3) deposing the same persons; (4) subpoenaing the

23   same witnesses; and (5) having the Court preside over the same arguments and evidence during

24   discovery and pre-trial motions, trial, and post-trial practice.

25   Simply put, there is no need for this Court and Thomson to expend resources and time

---

26   [7] The "law is well settled that an authorized sale of a patented product places that product
     beyond the reach of the patent . . . and a purchaser of such a product may use or resell the product
27   free of the patent. This longstanding principle applies similarly to a sale of a patented product
     manufactured by a licensee." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir.
28   1993) (citations omitted).

1  litigating identical issues to those already proceeding in the License Litigation. *See, e.g., Gen-*

2  *Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 964 (S.D. Cal. 1996) (staying patent action in

3  favor of state action "[b]ecause of the massive costs that proceeding with this litigation would

4  entail for the parties and the court").

5       Further, a stay is consistent with Federal Circuit precedent that strongly advises district

6  courts to resolve the threshold issue of a license defense before starting down the long road of

7  patent infringement litigation:

8       We recognize that in cases where a license is plead as a defense or where the
         license defense is anticipated in the complaint, that ***the most expeditious conduct***
9       ***of the trial would necessitate that the license issue be resolved first, for if the***
         ***license issue is resolved in the defendant's favor the infringement issue is***
10      ***mooted.***

11

12  *Jim Arnold Corp.*, 109 F.3d at 1577 (citation omitted).  This reasoning applies with special force

13  here because the state court's resolution of the license issue will have a dispositive effect on and

14  obviate significant issues in this case.  Presented with similar circumstances, the Federal Circuit

15  affirmed a stay and endorsed the district court's analysis that "piecemeal litigation would be

16  minimized by allowing the [license] and ownership issues to be decided first by the state court."

17  *Profile Mfg.*, 1994 WL 108059, at *3-4.

18       Lastly, practical considerations counsel in favor of a stay.  Given the risk of conflicting

19  judgments on the merits, the most sensible approach is to stay this case pending resolution of the

20  License Litigation. *See American Int'l Underwriters*, 843 F.2d at 1258 (affirming dismissal

21  under *Colorado River* where allowing the federal action to proceed would "create[] a strong

22  possibility of inconsistent results.").  Further, the state court's determination of the license issue

23  would enable the parties to have meaningful settlement discussions, a possibility that is now

24  foreclosed by the unpredictability of trying the same issue in two different forums.  Thus, staying

25  this case comports with the Supreme Court's direction that a *Colorado River* analysis must "be

26  applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H.*

27  *Cone*, 460 U.S. at 21.

28

1    **2.    The order in which jurisdiction was obtained favors a stay**

2    In evaluating this factor, the focus is not on which complaint was filed first, but on how

3    much progress has been made in the two actions. *Moses H. Cone*, 460 U.S. at 21; *Sirna*, 2006

4    U.S. Dist. Lexis 90773, at *28. Here, this factor clearly favors a stay.

5    The California state court assumed jurisdiction in the License Action almost three years

6    ago when TLC affirmatively chose to sue in state court to litigate the license issue. While

7    Plaintiffs filed their Complaint in the instant action three years before the License Action was

8    filed, all issues related to the Patents-in-suit had been stayed since shortly after the Complaint was

9    filed and only recently was the stay lifted. As a result, while the instant case is technically over

10    seven years old, it is still in the pleading phase and no significant discovery has occurred.

11    By contrast, the License Action is at an advanced stage and will likely proceed to trial

12    before this case will. Specifically, in the state action: (1) the parties have produced over 29,000

13    pages of documents; (2) written discovery is nearly completed, including responses to over 70

14    interrogatories and 70 requests for admissions; and (3) two key fact depositions have already been

15    taken. The Federal Circuit has affirmed the stay of a patent action when the "proceedings in the

16    [state] suit were well advanced at the time the stays were sought." *Intermedics*, 804 F.2d at 134.

17    **3.    Controlling law and convenience of forum favors stay**

18    It is undisputed that the legal issues related to the Elantec License will be determined

19    under California law. "A state court's expertise in applying its own law favors a *Colorado River*

20    stay." *Clark*, 376 F.3d at 688 (citation omitted). Where "the entire constellation of contractual

21    claims is presented only in the state court proceeding and is governed by state law, the state court

22    is in a far superior position to perform this task." *Lumen Constr., Inc. v. Brant Constr. Co.*, 780

23    F.2d 691, 696 (7th Cir. 1985). Also, given that TLC invoked the state court's jurisdiction in the

24    first instance to litigate the license issue, the state forum is presumptively at least as convenient as

25    this forum.

26    **4.    Adequacy of state court favors stay**

27    Given that TLC itself brought suit in California state court, there can be no doubt that the

28    state court provides "an adequate vehicle for the complete and prompt resolution" of the license

1   issue. *Moses H. Cone*, 460 U.S. at 28.  Nor are Plaintiffs prejudiced by having the license issue

2   determined in state court while this action is stayed.  Since Plaintiffs are non-practicing entities,

3   they are unable to obtain injunctive relief, and any potential damages will simply accrue during

4   the pendency of the state court action.  *See Summa Four*, 994 F. Supp. at 583-84 (finding no

5   prejudice proceeding with state action first since, if the patent is then held valid, infringed and

6   enforceable in a subsequent federal action, damages would have accrued during the stay).

7           The remaining factors are not relevant in this case.  *See Moses H. Cone*, 460 U.S. at 16

8   (stating that balancing test does not rest on a "mechanical checklist").

9   **IV.    THE CUSTOMER-SUIT DOCTRINE PROVIDES ANOTHER INDEPENDENT**

10          **BASIS TO STAY THIS ACTION**

11          While a stay of this action is proper under the *Colorado River* doctrine, the Customer Suit

12  Doctrine provides another independent basis on which to stay this action.  The issues of validity

13  and infringement should be decided as between the supplier of the allegedly infringing

14  components and the patentee.  Because TLC has pursued claims against multiple customers, a

15  single suit between the supplier and the patentee is the most efficient way to resolve patentee's

16  claims.

17          **A.      Applicable Law Regarding The Customer-Suit Doctrine**

18          "[T]he power to stay proceedings is incidental to the power inherent in every court to

19  control the disposition of the causes on its docket with economy of time and effort for itself, for

20  counsel, and for litigants."  *Landis*, 299 U.S. at 254 (1936).  "In patent infringement actions, stays

21  are appropriate where the first action is brought against the customer of an offending

22  manufacturer and a subsequent action is brought involving the manufacturer itself."  *Whelen*

23  *Techs., Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715 (N.D. Ill. 1990).  The Federal Circuit

24  explained that "[a]t the root of the preference for a manufacturer's declaratory judgment action ***is***

25  ***the recognition that, in reality, the manufacturer is the true defendant in the customer suit***."

26  *Katz*, 909 F.2d at 1464 (citation omitted).  Thus, litigation "brought by the manufacturer of

27  infringing goods takes precedence over a suit by the patent owner against customers of the

28  manufacturer."  *Id.*

When staying an action under the customer-suit doctrine, courts may consider several factors: (1) judicial efficiency; (2) the real party in interest; (3) whether a stay would prejudice the non-moving party; (4) the availability and convenience of witnesses; and (5) the convenience of the parties. *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993).

**B.    A Stay With Respect To Thomson Products Using Elantec Chips Advances Efficiency And Promotes Judicial Economy**

"[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy." *Tegic*, 458 F.3d at 1343. Here, a stay pending resolution of the License Litigation and the Declaratory Judgment Action significantly advances both of these interests.

**1.    A stay promotes efficiency and avoids duplicative litigation**

The principal issues to be decided in this litigation concerning Thomson products that use Elantec chips—license rights to the Patents-in-suit, claim construction, infringement based on Elantec's chips, invalidity, and unenforceability—are already pending before Judge Seeborg. Accordingly, resolution of several issues by Judge Seeborg may each independently render moot any infringement claims relating to such products. For example, a judgment that the Elantec License remains valid will mean that Thomson is licensed to practice the Patents-in-suit by using Elantec's sync separator chips. Because a license "constitute[s] a complete defense against a suit for infringement," *DeForest*, 273 U.S. at 242, TLC's infringement claims will be moot. Similarly, a judgment of invalidity in the Declaratory Judgment Action will also render this litigation moot because "invalid claim[s] cannot give rise to liability for infringement." *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983).

Under similar circumstances, courts routinely grant stays pursuant to the customer-suit doctrine. *See* Charrington Decl., Ex. B at 3 (staying the customer suit in the Harris Litigation in view of the Declaratory Judgment Action and License Litigation); *see also Card Activation Techs. v. Pier 1 Imps., Inc.*, No. 09 C 2021, 2009 WL 2956926, at *4 (N.D. Ill. Sept. 14, 2009) (granting stay when manufacturer's lawsuit could "conclusively decide the validity of the [asserted] patent and thus moot the instant patent infringement action"); *Ultra Prods., Inc. v. Best Buy Co.*, Civil Action No. 09-1095 (MLC), 2009 WL 2843888, at *6 (D.N.J. Sept. 1, 2009)

1  (granting stay pending resolution of supplier's litigation because that litigation "should clarify

2  and possibly simplify the issues in this current matter"); *ProBatter Sports, LLC v. Joyner Techs.,*

3  *Inc.*, 463 F. Supp. 2d 949, 956 (N.D. Iowa 2006) (reasoning that "resolution of the major issues

4  before the court, including the issues of patent infringement and patent validity, will advance the

5  prosecution or resolution of those issues in the Customer Lawsuits").

6  Moreover, resolution of the Declaratory Judgment Action will, at a minimum, greatly

7  simplify this case by streamlining potential discovery, eliminating many issues, and lead to a

8  more focused and condensed trial.  The law is well-settled that a stay is appropriate even if

9  resolution of the License Litigation and Declaratory Judgment Action do not entirely moot this

10  litigation.  *See Katz*, 909 F.2d at 1464 (staying customer suit when manufacturer suit may resolve

11  "major issues" while leaving some additional issues to be resolved in the customer suit).  "As the

12  Federal Circuit noted in *Katz*. . . , the manufacturer's case ***need only promise to resolve the***

13  ***'major issues'*** concerning the claims against the customer, ***not every conceivable issue***."  *Ultra*

14  *Prods.*, 2009 WL 2843888, at *5; *ProBatter*, 463 F. Supp. 2d at 956 (reasoning that "[a]lthough

15  there may be additional issues involving defendants in the Customer Lawsuits, . . . the resolution

16  of the [supplier] [l]awsuit will nonetheless significantly advance the prosecution or resolution of

17  the Customer Lawsuits").

18  **2.    A stay promotes judicial economy**

19  The Supreme Court has made clear that "[t]o permit a situation in which two cases

20  involving precisely the same issues are simultaneously pending in different District Courts leads

21  to the wastefulness of time, energy, and money."  *Continental Grain Co. v. Barge FBL-585*, 364

22  U.S. 19, 26 (1960) (addressing judicial economy in context of Section 1404(a)). [8]  This principle

23  is particularly apt in the context of patent litigation:

24  > "Piecemeal litigation in the complex and technical area of patent
   > and trademark law is especially undesirable."  In such cases, the

25  > interest of justice may dictate a transfer "to prevent an
   > extravagantly wasteful and useless duplication of the time and

26  > effort of the federal courts by the simultaneous trial of two complex

27  [8]  A stay under the customer-suit doctrine and a transfer under Section 1404(a) involve
   very similar analyses.  *See, e.g.*, *Kucala Enters., Ltd. v. Auto Wax Co.*, No. 02 C 1403, 2002 WL

28  1586415, at *2-4 (N.D. Ill. July 18, 2002).

1

2

3

> and elaborate cases involving substantially the same factual issues."
> By permitting two different courts to interpret the same patent claims, there is a heightened risk of inconsistent rulings which, in turn, promotes uncertainty and impedes the administration of justice.

4    *Whistler Group, Inc. v. PNI Corp.*, No. Civ.A. 3:03-CV-1536-G, 2003 WL 22939214, at *5 (N.D.

5    Tex. Dec. 5, 2003) (internal citations omitted).

6         This reasoning applies with equal force to the customer-suit doctrine in general and this

7    case specifically. *See Ricoh Co. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 557 (D. Del. 2003) ("[T]he

8    'customer suit exception,' recognizes that it is more efficient for the dispute to be settled directly

9    between the parties in interest."). In the Gennum Litigation, Judge Seeborg already invested

10   significant time and resources to become intimately familiar with the asserted patents and the

11   disputed technology, having conducted a six-day bench trial and issued a 43-page order that was

12   subsequently affirmed by the Federal Circuit. As such, having this Court perform the same work

13   that Judge Seeborg has done before and will do again in the Declaratory Judgment Action, is a

14   textbook example of "wastefulness of time, energy, and money."

15        In nearly identical circumstances, courts have transferred or stayed actions in deference to

16   proceedings pending before another court that has experience with the technical subject matter.

17   For example, in *Morrow v. Vertical Doors Inc.*, a court transferred an action to another district

18   court which had prior experience with the asserted patents:

19

20

21

22

23

24

25

> Judge Selna's findings of fact in earlier cases and construction of various patent terms . . . demonstrate that Judge Selna has invested significant judicial resources in administering the litigation of these patents. Although Plaintiffs may wish to pursue a different legal strategy than that of the parties currently before Judge Selna, and Plaintiff's claims may be based on different facts, the present dispute concerns the validity and potential infringement of the very same patents that VDI owns on vertically-operating door systems. ***Litigating this dispute in the District of Arizona would require this Court to conduct a thorough and complex review of a series of technical patents. Judge Selna has already completed such a review, and transferring this case to the Central District of California will eliminate the risk of inconsistent rulings.***

26   *Morrow v. Vertical Doors Inc.*, No. CV 09-0256-PHX-DGC, 2009 WL 1698560, at *5 (D. Ariz.

27   June 17, 2009) (emphasis added). Likewise, in *Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile*

28   *Commc'ns Co.*, a court transferred an action to another district court with prior experience

1  concerning the asserted patents:

2          In the California litigation, Judge Ware reviewed tutorials on the
3  technology at issue; conducted three claim construction
   proceedings; issued three claim construction orders construing over
4  twelve claim terms; considered motions for summary judgment and
   motions in limine; conducted a three-week jury trial in which he
5  heard invalidity, infringement, and inequitable conduct arguments;
   prepared a sixty-five page jury instruction; and considered motions
6  for judgment as a matter of law . . . .  While this Court is always
   willing to take the time and effort necessary to become versed in
7  the type of technology and the patents-at-issue, the Court is not
   persuaded that the interests of judicial economy would be well
8  served by retaining this case.  Judge Ware's investment of time and
   effort with these patents has been, and continues to be, substantial .
9  . . .  A duplication of his efforts would be wasteful of judicial
   resources and detrimental to judicial economy.

10  402 F. Supp. 2d 731, 735-37 (E.D. Tex. 2005).  This same reasoning supports a stay in this case.

11  **C.    Movants Are The Real Parties In Interest**

12      The customer-suit doctrine derives from the understanding that "in reality, the

13  manufacturer is the true defendant in the customer suit."  *Katz*, 909 F.2d at 1464 (citation

14  omitted).  Here, Movants are the real parties in interest with respect to Thomson products that use

15  Elantec chips.  Movants, not Thomson, are the entities responsible for researching, designing,

16  developing, and distributing the sync separator chips used in certain of the accused products.

17  Movants, not Thomson, are most familiar with the structure, function, and operation of the sync

18  separator chips.  Movants, not Thomson, possess the relevant documentation regarding the

19  design, testing, and implementation of the sync separator chips.  Movants, not Thomson, possess

20  intimate knowledge and details of the technology at issue in this case.  For these reasons,

21  "manufacturer suits for declaratory judgment are preferred over consumer suits for infringement."

22  *Targus Info. Corp. v. 800 Adept, Inc.*, No. 6:07-cv-1222-Orl-19DAB, 2007 WL 3306762, at *4

23  (M.D. Fla. Nov. 6, 2007).

24      Courts have consistently stayed customer suits in favor of litigation involving the

25  manufacturer because "it cannot be disputed that [the] manufacturer has primary and final control

26  of any design and manufacturing process that might infringe" and the manufacturer "therefore is

27  in the best position to defend its own products."  *Delphi Corp. v. Auto. Techs. Int'l, Inc.*, No. 08-

28  CV-11048, 2008 WL 2941116, at *4-5 (E.D. Mich. July 25, 2008); *see Honeywell*, 2005 WL

1   2465898, at *3 ("[F]rom the perspective of the [ ] defendants [plaintiff] has chosen to sue, and in

2   the interest of judicial economy, dealing with the manufacturers first is the fairest and most

3   efficient way to proceed."); *T.J. Smith & Nephew Ltd. v. Ferris Corp.*, No. 86 C 5461, 1987 WL

4   7496, at *2 (N.D. Ill. Mar. 2, 1987) ("[T]he manufacturer is clearly in the best position to either

5   defend against a claim of infringement or to affirmatively assert invalidity of the holder's patent.

6   Presumably it is the manufacturer who has the more detailed knowledge regarding the claim of

7   infringement, the expertise in the area, and the primary interest in the outcome of the litigation.").

8       **D.    A Stay Will Not Prejudice TLC**

9       Staying this litigation will not cause any prejudice to Thomson or to Plaintiffs.  First,

10  Thomson, the party that requested this Court lift the previous stay, supports Movants' motion to

11  intervene and stay pending resolution of License Litigation and the Declaratory Judgment Action.

12  (Charrington Decl. at ¶ 23.)

13      Second, Plaintiffs cannot possibly be prejudiced by a stay given that they failed to comply

14  with this Court's September 20, 2004 Order (D.I. 50), and never informed the Court that the

15  asserted patents had been reissued by the PTO, despite the fact that they were actively litigating

16  the Reissue patents in other jurisdictions.

17      Third, Plaintiffs do not practice any of the technology covered by the asserted patents and

18  is, therefore, unable to obtain injunctive relief.  Thus, any potential harm to Plaintiffs is fully

19  compensable through monetary damages, which will simply accrue during the pendency of the

20  License Litigation and Declaratory Judgment Action.  *See, e.g.*, *SP Techs., LLC v. HTC Corp.*,

21  No. 08 C 3760, 2009 WL 1285933, at *3 (N.D. Ill. May 6, 2009) (finding no prejudice when

22  "[plaintiff] is nothing more than a patent holding company . . . . [and] can always move to recover

23  damages" after stay).

24      Finally, only minimal written discovery has occurred regarding the Patents-in-suit, no

25  documents have been produced, and no depositions have been noticed.  Accordingly, a limited

26  stay concerning Thomson products that use Elantec chips will not cause any harm to Plaintiffs.

27  *See, e.g.*, *Ultra Prods.*, 2009 WL 2843888, at *6 ("[A] temporary stay of the current action will

28  not prejudice [plaintiff], especially given that no trial date has been set, no discovery has

1    occurred, and the initial conference before the Magistrate Judge was put on hold pending our

2    ruling as to a stay.")

3        **E.**    **Availability And Convenience Of Witnesses And Parties Favors A Stay**

4        This factor also weighs heavily in favor of a stay pending resolution of the License

5    Litigation and Declaratory Judgment Action.  The engineers knowledgeable about the research,

6    design, functionality, and operation of the Movants' sync separator chips primarily reside in the

7    Silicon Valley area.

8    **V.**    **CONCLUSION**

9        For the foregoing reasons, Movants Elantec and Intersil respectfully request this Court (1)

10    permit them to intervene for the limited purposes of staying this action, and (2) grant Movants'

11    motion to stay this litigation as it relates to Elantec chips, pending resolution of the License

12    Litigation and Declaratory Judgment Action.

13    Dated:  December 30, 2009

14

15

16

17

18

Respectfully submitted,

JONES DAY

By: _____/s/ Gregory L. Lippetz_____
              Gregory L. Lippetz

Attorney for Movants
ELANTEC SEMICONDUCTOR, INC. AND
INTERSIL CORPORATION

19    SVI-75563v6

20

21

22

23

24

25

26

27

28