UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| TECHNOLOGY LICENSING CORPORATION, a Nevada Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>THOMSON, INC., a Delaware Corporation,<br><br>        Defendant._____/ | NO. CIV. 2:03-1329 WBS PAN<br><br>MEMORANDUM AND ORDER RE: <u>MOTIONS FOR SUMMARY JUDGMENT</u> |

----oo0oo----

Technology Licensing Corporation ("TLC") owns U.S. Patent Nos. RE40,411 E (the "'411" patent) and RE40,412 E (the "'412" patent), which are July 1, 2008 reissues of U.S. Patent Nos. 5,745,250 (the "'250 patent"), and 5,486,869 (the "'869 patent"), respectively.  The '411 and '412 patents relate to identifying and separating the sync signal component of a composite video signal in order to allow accurate reproduction of the transmitted image.  TLC filed this action against Thomson for

1

infringing the '411 and '412 patents by incorporating into its products Gennum and Elantec sync separator chips that practice the '411 and '412 patents. Thomson moves for summary judgment on TLC's infringement claims that are based on Thomson's incorporation of the Gennum GS4882 and GS4982 chips and the Elantec EL4583 and EL4581 chips because those claims are barred by the Kessler[1] doctrine and res judicata. (Docket No. 270.) Thomson also moves for summary judgment on the issue of no damages before January 5, 2010 with respect to infringement claims arising from Thomson's incorporation of the Elantec EL 4511 chip because of TLC's failure to provide Thomson notice of infringement. (Docket No. 274.)

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Id. at 256. On issues for which the ultimate burden of persuasion at trial lies with the nonmoving party, the moving party bears the initial burden of establishing the absence of a genuine issue of material

---

[1] Kessler v. Eldred, 206 U.S. 285 (1907). The Kessler Court held that a manufacturer who previously prevailed in a patent infringement suit could enjoin subsequent patent infringement suits against the manufacturer's customers.

2

1 fact and can satisfy this burden by presenting evidence that
2 negates an essential element of the nonmoving party's case or by
3 demonstrating that the nonmoving party cannot produce evidence to
4 support an essential element of its claim or defense.  <u>Nissan</u>
5 <u>Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099,
6 1102 (9th Cir. 2000).

7    Once the moving party carries its initial burden, the
8 nonmoving party "may not rely merely on allegations or denials in
9 its own pleading," but must go beyond the pleadings and, "by
10 affidavits or as otherwise provided in [Rule 56,] set out
11 specific facts showing a genuine issue for trial."  Fed. R. Civ.
12 P. 56(e); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324
13 (1986); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir.
14 1989).  On those issues for which it will bear the ultimate
15 burden of persuasion at trial, the nonmoving party "must produce
16 evidence to support its claim or defense."  <u>Nissan Fire</u>, 210 F.3d
17 at 1103.

18    In its inquiry, the court must view any inferences
19 drawn from the underlying facts in the light most favorable to
20 the nonmoving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith</u>
21 <u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The court also may not
22 engage in credibility determinations or weigh the evidence, for
23 these are jury functions.  <u>Anderson</u>, 477 U.S. at 255.

24  A. <u>Motion for Partial Summary Judgment on Kessler Doctrine</u>
25    <u>and Res Judicata</u>

26    In 1998, Elantec filed a declaratory judgment action in
27 the Northern District of California seeking a declaration that
28 the '869 and '250 patents--reissued as the '411 and '412 patents-

3

in-suit--were invalid, unenforceable, and were not infringed by Elantec's products including the EL4583 and EL4581 chips at issue in this litigation.  TLC filed counterclaims against Elantec for infringing certain claims in the '250 and '869 patents.  The parties settled, entered into a patent license agreement, and filed a stipulated dismissal with prejudice on April 5, 1999.  In 2002, TLC terminated the license agreement with Elantec because it believed Elantec violated the agreement.  TLC brought this suit against Thomson for patent infringement by, inter alia, incorporating Elantec chips in its products on June 20, 2003.  (Docket No. 1.)  In 2006, TLC and other plaintiffs sued Elantec in California Superior Court for violations of the license agreement.  In 2009, Elantec filed a declaratory judgment action against TLC in the Northern District of California alleging the '411 and '412 patents are invalid.  TLC counterclaimed infringement.  The case is currently pending.

In 2001, TLC sued Videotek, Inc. in the Northern District of California for infringing certain claims in the '250 and '869 patents.  In 2002 Videotek filed a third party complaint against Gennum seeking indemnification.  Gennum cross-claimed against TLC for non-infringement and invalidity of the '250 and '869 patents, and TLC filed counterclaims against Gennum alleging infringement through several of its sync separator chips, including the GS4882 and GS4982 chips at issue in this litigation.  See Tech. Licensing Corp. v. Gennum Corp., No. 01-4204, 2007 WL 1319528 (N.D. Cal. May 4, 2007).  Then Magistrate Judge Seeborg ruled that the GS4882 and GS4982 chips did not infringe the '869 patent claims then at issue and that while

certain Gennum chips would infringe the '250 patent claims then at issue, those claims were invalid. Id. Specifically, Judge Seeborg found that the claims at issue in the '250 patent were entitled to a priority date no earlier than June 22, 1995, and were invalid because certain Elantec sync separator chips existed in 1993 and therefore constituted prior art. Id. at *21. The Federal Circuit affirmed those aspects of Judge Seeborg's ruling that were appealed. Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316 (Fed. Cir. 2008).

Thomson argues that the prior litigation between TLC and Elantec and Gennum has decided the issues of patent infringement and validity between those chips and the patents-in-suit, and that under the Kessler doctrine and res judicata Thomson is entitled to the benefit of those judgments.

### 1. Res Judicata

Under federal law, claim preclusion–-otherwise known as res judicata--bars "lawsuits on 'any claims that were raised or could have been raised' in a prior action." Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001)). Claim preclusion requires the moving party to satisfy three elements: (1) an identity of the claims, (2) the previous action must have resulted in a final judgment on the merits, and (3) the present action must involve the same parties or persons in privity of interest. Providence Health Plan v. McDowell, 385 F.3d 1168, 1173-1174 (9th Cir. 2004).

In its March 10, 2010 claim construction Order applying collateral estoppel and adopting Judge Breyer's construction of

5

the terms "circuit" and "circuitry" in means-plus-function format, this court stated that "[a]s one of Gennum's customers, Thomson is in privity with Gennum for preclusion purposes." Tech. Licensing Corp. v. Thomson, Inc., No. 03-1329, 2010 WL 843560, at *6 (E.D. Cal. Mar. 10, 2010) (citing Schnitger v. Canoga Elecs. Corp., 412 F.2d 628 (9th Cir. 1972)).  It is therefore law of the case that Thomson is in privity with Gennum. It also follows that Thomson is in privity with Elantec.  The court will therefore address only the first two elements of res judicata.

          a.    <u>Elantec Litigation</u>

Because a court-ordered dismissal with prejudice is a final judgment on the merits, Zenith Ins. Co. v. Breslaw, 108 F.3d 205, 207 (9th Cir. 1997), the Elantec litigation that resulted in a stipulated dismissal with prejudice satisfies the second prong of res judicata.  The remaining issue, therefore, is whether the claims asserted against Thomson are the same claims as those previously asserted against Elantec.  "Whether two claims for infringement constitute the 'same claim' is an issue particular to patent law and thus Federal Circuit law applies." Roche Palo Alto LLC v. Apotex, Inc., 531 F.3d 1372, 1379 (Fed. Cir. 2008).  The Federal Circuit uses the term "claim" for preclusion purposes "in the sense of the facts giving rise to the suit."  Foster v. Hallco Mfg. Co. 947 F.2d 469, 471 (Fed. Cir. 1991).

The history of the Elantec litigation is clear that the parties reached a license agreement in 1999 and operated under it for three years, until Elantec was acquired by Intersil in 2002.

TLC and Elantec disagree about what effect the acquisition had on the license agreement, and shortly after the acquisition TLC sued Thomson for patent infringement and eventually filed multiple suits against Elantec which are still ongoing.  While the same Elantec chips and virtually identical patents are at issue, the court cannot say as a matter of law that the facts giving rise to TLC's suit against Thomson are the same facts that gave rise to TLC's original suit against Elantec.  Elantec's alleged violation of the license agreement in 2002 would have given rise to new claims of patent infringement against Elantec that would not be barred by the stipulated dismissal with prejudice of the earlier suit.  Indeed, TLC and Elantec are involved in numerous lawsuits stemming from Elantec's alleged breach of the license agreement.  TLC's claims against Thomson which stem from its incorporating Elantec chips, therefore, are not barred by res judicata.

          b.    Gennum Litigation

          The parties agree that Judge Seeborg's ruling constitutes a prior judgment on the merits.  The only element of claim preclusion at issue, therefore, is whether the present suit involves the same claims as in the Gennum litigation.  TLC argues that the present suit cannot constitute the same claim because the patents at issue are the '411 and '412 reissue patents rather than the '250 and '869 patents.  The parties agree that the '411 and '412 patents include patent claims that were not present in the '250 and '869 patents, and that these non-original patent claims constitute narrower versions of the original patent claims that they replace.  See 35 U.S.C. § 251 ("No reissued patent shall be granted enlarging the scope of the claims of the

7

1  original patent unless applied for within two years from the
2  grant of the original patent.")  Yet it is also possible that the
3  reissue patent claims are not "substantially identical" to the
4  claims in the original patents.  See 35 U.S.C. § 252.  Reissue
5  patents are enforceable against infringing activity that occurs
6  after the original patent is issued "to the extent that its
7  claims are substantially identical" to the claims of the original
8  patent."  Id.  Thomson has not provided any information for the
9  court to determine that the non-original reissued claims are
10 "substantially identical" to the original claims.  The court,
11 therefore, will not apply res judicata to those claims.

12         With respect to the claims in the '411 and '412 patents
13 that are identical to claims in the '250 and '869 patents, res
14 judicata still does not apply.  The '411 and '412 patents were
15 issued on July 1, 2008, and TLC argues that infringement is
16 ongoing to this day.  Because the '250 and '869 patents ceased to
17 exist when the reissue patents were issued, TLC could not have
18 asserted its infringement claims against Thomson with respect to
19 the '411 and '412 patents any earlier than July 1, 2008.  See
20 Cordis Corp. v. Boston Sci. Corp., 635 F. Supp. 2d 361, 367 (D.
21 Del. 2009).

22         2.   Kessler Doctrine

23         Thomson also argues that summary judgment is
24 appropriate because under the doctrine of Kessler v. Eldred, 206
25 U.S. 285 (1907), product manufacturers can obtain injunctions
26 preventing patent holders from suing their customers for patent
27 infringement where the manufacturer has previously prevailed in a
28 patent infringement suit against the patent holder.  See, e.g.,

1  MGA, Inc. v. Gen. Motors Corp., 827 F.2d 729 (Fed. Cir. 1987);
2  B.F. Goodrich Co. v. Am. Lakes Paper Co., 23 F. Supp. 632 (D.
3  Del. 1938).  The Kessler doctrine appears to be nothing more than
4  a patent-specific application of res judicata between
5  manufacturers of allegedly infringing products and their
6  customers in patent infringement suits against the customer.  The
7  Supreme Court, Federal Circuit, and Ninth Circuits, however, have
8  declined to address the issue of whether the customer has the
9  right to invoke the Kessler doctrine as a defense to patent
10 infringement suits.  See Kessler, 206 U.S. at 288-289.

11         Kessler identified the right protected as belonging to
12 the manufacturer--that is, the right to receive an injunction
13 preventing its customers from being sued where it had previously
14 prevailed.  Id.  Thomson cites to only one case where the Kessler
15 doctrine was held to be properly raised by a customer as a
16 defense to suit.  General Chem. Co. v. Standard Wholesale
17 Phosphate & Acid Works, Inc., 101 F.2d 178 (4th Cir. 1939); see
18 id. at 179-80 (making much of the fact that the customer could
19 recover from the manufacturer if it were found liable for
20 infringement, noting that the customer was in privity with
21 manufacturer, and stating that the customer was "in a position
22 closely analogous to that of a surety").  The facts in this case
23 are unclear and potentially disputed as to whether Gennum and
24 Elantec have agreed to indemnify Thomson should it be found to
25 have infringed TLC's patents.  (See TLC's Statement of Disputed
26 Facts ¶¶ 22-24).  Nor is it clear whether Elantec or Gennum
27 assumed responsibility for patent infringement that may occur by
28 using their chips.  (See id.).

9

The <u>Kessler</u> doctrine case law cited by Thomson is not only old and sparse, but conflicting as well. The <u>General Chemical</u> court notes that the only other court of appeals to have decided the issue at that time found that the customer did not have the right to assert the <u>Kessler</u> doctrine as a defense. See <u>Wenborne-Karpen Dryer Co. v. Dort Motor Car Co.</u>, 14 F.2d 378 (6th Cir. 1926). <u>General Chemical</u> is not binding authority on this court and this court finds it would be inappropriate to extend <u>Kessler</u> to this case given the apparent factual differences between the customer in this case and the customer in <u>General Chemical</u>. Even if the <u>Kessler</u> doctrine did apply to the instant case, Thomson has not met its burden to show that Elantec and Gennum "prevailed" in their prior suits against TLC for the same reasons articulated in the "same claim" discussion of res judicata above.

Thomson's motion for partial summary judgment on the basis of res judicata and the <u>Kessler</u> doctrine will therefore be denied.

B. <u>Motion for Partial Summary Judgment on No Damages Prior to January 5, 2010</u>

Thomson also moves for summary judgment on the issue of no damages for infringement related to the Elantec EL4511 chip present in its 8900 GEN-SM product before January 5, 2010--the date that TLC served its response to Thomson's Interrogatory No. 1 identifying the Elantec EL4511 chip as a source of Thomson's infringement of the patents-in-suit. (Docket No. 274.)

When a patentee fails to mark its product as patented, its can only recover damages for infringement that occurs after

10

the infringer receives notice of infringement. 35 U.S.C. § 287(a). The patentee "has the burden of pleading and proving at trial that she complied with the statutory notice requirements" of § 287. Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996). The Supreme Court in Dunlap v. Schofield, 152 U.S. 244 (1894), held that the "clear meaning" of the "notice of infringement" language is that a patentee cannot recover damages absent marking or notice to the "particular defendants by informing them of his patent and of their infringement of it." Id. at 247-48. The Court further stated that notice "is an affirmative act, and something to be done by him." Id.; see also Amsted Indus. Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."). Filing an action for infringement constitutes notice of infringement. 35 U.S.C. § 287(a). It is undisputed that the Elantec was not marking its chips as patented.[2]

Thomson first argues that TLC failed to properly "file an action for infringement" under § 287(a) related to the Elantec EL4511 chip because the original Complaint and FAC did not comply with Federal Rule of Civil Procedure 8(a) pleading requirements for patent infringement suits. See McZeal v. Sprint Nextel Corp., 501 F.3d 1352, 1356-57 (Fed. Cir. 2007) (explaining that then Federal Rule of Civil Procedure Form 16 (2006)--now Form 18-

---

[2] Because the court finds no need to reach the issue, it does not address whether Elantec provided actual notice its chips were covered by patents in some other manner.

11

-"sets forth a sample complaint for patent infringement that includes only the following elements: 1) an allegation of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; 4) a statement that the plaintiff has given the defendant notice of its infringement; and 5) a demand for an injunction and damages") (substitution in McZeal).[3]  TLC's original Complaint and FAC did not specifically allege that TLC had given Thomson notice of its infringement prior to filing the Complaint.[4]

As the court has previously stated on a similar motion for partial summary judgment by Thomson, "[s]ince the pleading itself could serve as notice under § 287, the alleged infringer should be entitled to rely on plaintiff's implicit assertion that the pleading is notice in the absence of any allegations to the contrary."  (July 1, 2005 Order on Thompson's Motion for Partial Summary Judgment (Docket No. 170), at 5.)  While litigation related to the '250 and '869 patents was stayed when the court issued its July 1, 2005 Order (see Docket No. 50), the reasoning therein applies with equal force to the present motion.  TLC's original Complaint and FAC therefore constitute valid "actions for infringement" pursuant to Rule 8(a) such that Thomson was on notice that it had allegedly infringed the '250 and '869 patents.

---

[3] The court expresses no opinion as to whether such a pleading would comply with Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937 (2009).

[4] TLC's Second Amended Complaint ("SAC"), filed on January 21, 2010 (Docket No. 240), alleges that Thomson has received notice of its infringement pursuant to 35 U.S.C. § 287.  (SAC ¶ 12.)

12

1            Thomson next argues that the original Complaint and FAC
2   did not put it on notice that the Elantec EL4511 chip or its
3   8900GEN-SM product infringed the patents-in-suit because neither
4   was specifically listed as an infringing product or component.
5   Specifically, Thomson notes that the original Complaint, FAC, and
6   July 1, 2005 Order all predate Atlantic Corp. v. Twombly, 550
7   U.S. 544 (2007), Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937
8   (2009), and McZeal.  TLC filed its original Complaint for
9   infringement of, inter alia, the '250 and '869 patents--now
10  reissued as the '411 and '412 patents-in-suit--on June 20, 2003
11  (Docket No. 1) and filed a First Amended Complaint ("FAC") on May
12  12, 2005 (Docket No. 97).

13           The original Complaint alleged that Thomson
14  "manufactures, uses, and sells products with synchronization
15  signal separation capabilities, including, but not limited to,
16  the Thomson Grass Valley 8900FSS" and that Thomson infringed one
17  or more claims of the '250 and '869 patents "by manufacturing,
18  using, and selling such products."  (Compl. ¶ 11.)  The FAC also
19  alleged that Thomson "manufactures, uses, and sells products with
20  synchronization signal separation capabilities, including, but
21  not limited to, the Thomson Grass Valley 8900 FSS" and that
22  Thomson infringed one or more claims of the '250 and '869 patents
23  "by manufacturing, using, and selling such products."  (FAC ¶
24  12.)  While the EL4511 chip is one component of at least one
25  Thomson product that is alleged to infringe the patents-in-suit,
26  "a plaintiff in a patent infringement suit is not required to
27  specifically include each element of the claims of the asserted
28  patent."  McZeal, 501 F.3d at 1357 (holding that complaint

13

alleging "line of wireless VoIP products" infringe patent is sufficient to survive Rule 12(b)(6) motion to dismiss). Even under the heightened pleading standard articulated in Iqbal,[5] TLC's complaints allege infringement with sufficient particularity such that Thomson was aware that its "products with synchronization signal separation capabilities" including the 8900FSS product allegedly infringed specific patent claims of the '869 and '250 patents. The court will therefore deny TLC's motion for partial summary judgment for no damages prior to January 5, 2010.

    IT IS THEREFORE ORDERED that Thomson's motions for partial summary judgment be, and the same hereby are, DENIED.

DATED:  August 27, 2010

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[5] Thomson has not even attempted to explain under what circumstances Iqbal or Twombly might possibly be retroactive to a non-operative complaint for purposes of determining whether, at that time, Thomson was properly put on notice of TLC's claims of patent infringement.

14