UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| TECHNOLOGY LICENSING CORPORATION, | NO. CIV. 2:03-1329 WBS EFB |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| v. | |
| TECHNICOLOR USA, INC., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS. | |

----oo0oo----

Plaintiff Technology Licensing Corporation ("TLC") brought this action against defendant Technicolor USA, Inc. ("Technicolor"), for patent infringement.  Technicolor then brought several counterclaims.  TLC now moves to dismiss Technicolor's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the court does not have subject matter jurisdiction.

///

1

I. <u>Factual and Procedural Background</u>

TLC owns U.S. Patent Nos. Re. 40,411 (the "'411 patent") and Re. 40,412 (the "'412 patent"), which are July 1, 2008, reissues of U.S. Patent Nos. 5,754,250 and 5,486,869, respectively. (Third Am. Compl. ("TAC") ¶¶ 4, 6-8, Exs. A-D (Docket No. 317).) The '411 patent comprises "a method and apparatus for identifying and separating the synchronizing signal component of video like signals by identifying or detecting the arrangement or sequence of the known occurances [sic] of events or patterns of the sync" and the '412 patent "provides a synchronizing signal separation." (<u>Id.</u> Ex. A at 1, Ex. C at 1.)

On March 28, 2011, TLC filed a Notice of Acceptance of Technicolor's Rule 68 Offer of Judgment, (Docket No. 326), and the Clerk entered judgment on TLC's claims accordingly. (Docket No. 327.) The case was administratively closed despite Technicolor's remaining counterclaims: declaratory judgment of non-infringement, declaratory judgment of patent invalidity, and breach of a covenant made in a previous settlement agreement not to sue. (Docket No. 318.) Technicolor moved to reopen the case, which the court granted. (Docket No. 332.) Technicolor agrees that its claim for declaratory judgment of non-infringement was extinguished by the Rule 68 Offer of Judgment, but wishes to proceed on its two remaining counterclaims.

TLC has clarified that it understood the Rule 68 judgment to include its release of all asserted claims against Technicolor, and offers the following covenant not to sue: "TLC unconditionally agrees not to sue Technicolor USA, Inc. for infringement as to any claim of the patents-in-suit based upon

2

the products currently manufactured and sold by Technicolor USA, Inc." (TLC's Resp. to Technicolor's Ex Parte Mot. to Reopen the Case at 4:16-18 ("Resp. to Ex Parte Mot.") (Docket No. 330).)

## II. Discussion

### A. Effect of Rule 68 Judgment

"Because a Rule 68 judgment is the product of an agreement between the parties, the parties define the scope of the judgment." Scosche Indus., Inc. v. Visor Gear Inc., 121 F.3d 675, 678 (Fed. Cir. 1997); see Fed. R. Civ. P. 68. Here, TLC's acceptance of Technicolor's Offer of Judgment stated that TLC accepted "in full compromise of all claims by [TLC] asserted against [Technicolor]." (TLC's Notice of Acceptance at 2:1-5.)

TLC apparently believed that, in accepting the Offer of Judgment, a final judgment would be entered on all claims. That understanding was certainly not unreasonable. Under the Rules, the term "judgment" refers to "any order from which an appeal lies." Fed. R. Civ. P. 54(a). A judgment is generally entered only when "all the claims and all the parties' rights and liabilities" are adjudged unless the court expressly determines that judgment should be entered as to fewer than all the claims. Fed. R. Civ. P. 54(b) (emphasis added). Thus, TLC had every reason to believe that its acceptance of the Offer of Judgment would dispose of the entire case.

Nevertheless, the court must interpret the Rule 68 judgment "according to general principles of contract law," limiting the scope of the judgment to its terms. Scosche, 121 F.3d at 678. In Scosche, the court reviewed the Offer of Judgment to determine the intent of the parties, finding that the

3

judgment was limited to "satisfy[ing] Visor Gear's claim of infringement with respect to all allegedly infringing Scosche products up to the date of the judgment." Scosche, 121 F.3d at 678 (emphasis added). Thus, because the threat of future suit remained, Visor Gear's acceptance of the Offer of Judgment on its patent infringement claim did not extinguish Scosche's claim for declaratory judgment of patent invalidity.

In the instant action, it is clear from the plain language of TLC's Notice of Acceptance that the Rule 68 judgment applied only to "claims by [TLC] asserted against [Technicolor]." (TLC's Notice of Acceptance at 2:1-5 (emphasis added).) Thus, the Rule 68 judgment by itself did not extend to counterclaims by Technicolor asserted against TLC, and the court must consider whether it retains subject matter jurisdiction over those counterclaims.

B.   Declaratory Judgment of Patent Invalidity Claim

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Article III of the United States Constitution limits the power of the federal judiciary to "cases" and "controversies." U.S. Const. art. III § 2. "The requirement of actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory judicial rulings . . . ." BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed. Cir. 1993), abrogated on other grounds by MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007).

The Declaratory Judgment Act provides that "[i]n a case

4

of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Subject matter jurisdiction in a declaratory judgment action thus depends on the existence of "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[1] MedImmune, 549 U.S. at 127 (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

A useful question to ask in determining whether an actual controversy exists is what, if any, "underlying legal cause of action [] the declaratory judgment defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it." Microchip Tech. Inc. v. Chamberlain Grp., Inc., 441 F.3d 936, 943 (Fed. Cir. 2006).[2] "Without an underlying legal cause of action, any adverse

---

[1] The previous test for subject matter jurisdiction required that there be "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993). "The Supreme Court's opinion in MedImmune represents a rejection of [the] reasonable apprehension of suit test." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007).

[2] "In patent cases, Federal Circuit law applies to determinations of '[w]hether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity.'" Oracle Corp. v. Teilhard Techs., No. C 06-02889, 2006 WL 2844926, at *2 (quoting MedImmune, Inc. v. Centocor, Inc., 409 F.3d 1376, 1378 (Fed. Cir. 2005) (citations omitted), rev'd on other grounds, 549 U.S. 1163 (2007)).

5

economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction." Id.

The party claiming declaratory judgment jurisdiction has the burden of establishing that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since. See Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). "If . . . a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction" at that time. Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 96 (1993). At the time Technicolor filed its counterclaim for declaratory judgment of invalidity, TLC's patent infringement claim was pending, so a case or controversy existed.

The Federal Circuit has held, however, in a line of cases beginning with Super Sack Manufacturing Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995), abrogated on other grounds by MedImmune, 549 U.S. 118, that "a covenant not to sue for patent infringement divests the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties." Dow Jones & Co. v. Ablaise Ltd., 606 F.3d 1338, 1346 (Fed. Cir. 2010) (emphasis added); see also Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1345 (Fed. Cir. 2007).

Technicolor argues that, in this case, TLC's covenant not to sue is insufficient to divest the court of jurisdiction for two reasons: the covenant was made too late in the litigation to have a meaningful effect,old the language of the covenant

6

does not address all possible claims against Technicolor.[3]

### 1. Effect of Covenant Not to Sue

Technicolor argues that, because TLC expressed its covenant not to sue <u>after</u> Rule 68 judgment was entered, the covenant does not affect the court's subject matter jurisdiction. Technicolor cites <u>Fort James Corp. v. Solo Cup Co.</u>, 412 F.3d 1340 (Fed Cir. 2005), which held that a covenant not to sue offered by the patentee after a jury verdict of non-infringement did not divest the court of subject matter jurisdiction over a declaratory judgment counterclaim for unenforceability. <u>Id.</u> at 1348-49.

<u>Fort James</u> is a narrow exception to the general rule that a covenant not to sue divests the court of subject matter jurisdiction. <u>Benitec</u>, 495 F.3d at 1347. Two factors set <u>Fort James</u> apart: (1) the court had already gone through the "considerable effort" connected with a trial, <u>id.</u>, and (2) "in <u>Fort James</u>, the jury's verdict of non-infringement[, rather than the covenant not to sue,] had removed any reasonably apprehensible justiciable controversy between the parties." <u>Dow Jones</u>, 606 F.3d at 1346. Here, no trial has taken place.

---

[3] Technicolor quotes <u>Cardinal Chemical Co. v. Morton International, Inc.</u>, 508 U.S. 83 (1993), for the proposition that invalidity claims "did not become moot when [the Federal Circuit] affirmed a finding of noninfringement." <u>Id.</u> at 98. However, that case was strictly limited to the holding that "a claim for a declaratory judgment of invalidity is independent of the patentee's charge of infringement in the following--and only the following--way: an affirmed finding of noninfringement does not, without more, justify a reviewing court's refusal to reach the trial court's conclusion on invalidity." <u>Super Sack Mfg. Corp. v. Chase Packaging Corp.</u>, 57 F.3d 1054, 1060 (Fed. Cir. 1995), <u>abrogated on other grounds by</u> <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118 (2007) (citing <u>Cardinal Chem.</u>, 508 U.S. 83 (1993)).

7

1        As to the second factor, it appears that the <u>Fort James</u> court was particularly concerned with the timing of the covenant not to sue because the plaintiff, after having <u>lost</u> its patent infringement case at trial, made a meaningless covenant not to sue in an effort to avoid counterclaims against it. See <u>Fort James</u>, 412 F.3d at 1348-49.  Here, TLC has actually succeeded on its patent infringement claim, so its covenant not to sue carries a meaningful effect that the covenant in <u>Fort James</u> did not.

         2.    <u>Content of Covenant Not to Sue</u>

"[W]hether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant."  <u>Dow Jones</u>, 606 F.3d at 1346-47 (quoting <u>Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.</u>, 556 F.3d 1294, 1297 (Fed. Cir. 2009)) (internal quotation marks omitted).  TLC's covenant not to sue includes "infringement as to any claims of the patents-in-suit based upon the products currently manufactured and sold by Technicolor USA, Inc."  (Resp. to Ex Parte Mot. at 4:16-18.)  Technicolor argues that the covenant does not apply to (1) its activities, specifically inducement of infringement, and (2) future products, thus giving TLC remaining causes of action it could threaten to bring against Technicolor.

TLC states in its Reply that its covenant not to sue "even extends to any inducement activity relating to those Technicolor products [to which the covenant applies.]"  (TLC's Reply in Supp. of its Mot. to Dismiss at 3:14 (Docket No. 350).)  TLC's covenant not to sue "based upon the products" can reasonably be interpreted to extend to activities relating to

those products; there is no indication that it is limited to sales of those products. Furthermore, since TLC concedes that its covenant extends to inducement, it would be estopped from asserting otherwise in the future. See Super Sack, 57 F.3d at 1059 ("Super Sack itself is bound, both now and in the future, by its promise not to sue Chase."). Accordingly, the court is satisfied that the covenant not to sue is sufficiently broad to remove any case or controversy regarding Technicolor's relevant activities.

Technicolor also argues that the phrase "currently manufactured" in TLC's covenant is ambiguous and could be interpreted to exclude a product manufactured in the future, even if it has the same design as a currently-manufactured product.[4] Two cases decided before MedImmune, and thus applying the now-disapproved "reasonable apprehension of suit" test, remain instructive.

In Super Sack, Chase was engaged in no "present activity" placing it at risk of an infringement suit and Chase did not claim it was planning to make any new infringing product. Thus, the Federal Circuit found that Super Sack's unconditional agreement "not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently

---

[4] Technicolor's reliance on Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294 (Fed. Cir. 2009), is unfounded. In that case, the court found that a continuing case or controversy existed, but the relevant covenant not to sue did not even extend to currently-produced products. Id. at 1300.

manufactured and sold by Chase"[5] was sufficient to divest the court of jurisdiction over Chase's counterclaims of non-infringement, invalidity, and unenforceability. Super Sack, 57 F.3d at 1056, 1059-60. The court further explained that "[t]he residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim for declaratory judgments of invalidity." Id. at 1060.

In Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852 (Fed. Cir. 1999), Amana sued Quadlux for "declaratory judgments of patent invalidity and noninfringement." Id. at 855. Quadlux responded with a covenant not to sue Amana for patent infringement based on the patent-in-suit "as it presently reads, with respect to any product currently advertised, manufactured, marketed or sold by Amana, or any product which was advertised, manufactured, marketed or sold by Amana prior to the date of" the covenant. Id. The Federal Circuit held that this promise divested the district court of jurisdiction, notwithstanding that at some indefinite point in the future, Amana might develop new products or the patent might be reissued. Id. at 855-56.

To demonstrate a case or controversy, Technicolor would thus need to provide the court with information regarding its intention to produce new products in the future that might infringe on TLC's patents. It has not done so. Accordingly, there is no "substantial controversy, between [TLC and Technicolor], of sufficient immediacy and reality to warrant the

---

[5] The covenant not to sue in Super Sack is, in all relevant parts, identical to the one given by TLC in this action.

10

issuance of a declaratory judgment," Benitec, 495 F.3d at 1349 (quoting MedImmune, 549 U.S. at 127), and the court will grant TLC's motion to dismiss Technicolor's counterclaim for declaratory judgment of patent invalidity.

### C. Breach of Covenant Not To Sue Claim

Because the court will dismiss the remaining patent-related claim over which it has original jurisdiction pursuant to 28 U.S.C. § 1338(a), the court no longer has original jurisdiction over this action. (See Technicolor's Answer & Affirmative Defenses to TLC's Third Am. Compl. & First Am. Counterclaims ¶ 88 (Docket No. 318).) Federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

A district court "may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc) (explaining that a district court may decide sua sponte to decline to exercise supplemental jurisdiction). The Supreme Court has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

   Comity weighs in favor of declining to exercise supplemental jurisdiction because the state court is competent to hear the state law claim and may have a better understanding of the relevant state law.  As for judicial economy, although the action has certainly been pending in this court longer than the "usual case," Technicolor's state law claim itself has not been the subject of extensive litigation.  Judicial economy does not weigh in favor of exercising supplemental jurisdiction.  Lastly, convenience and fairness do not weigh in favor of exercising supplemental jurisdiction.  The state and federal fora are equally convenient for the parties.  There is no reason to doubt that the state court will provide an equally fair adjudication of the issues.  Accordingly, the court declines to exercise supplemental jurisdiction and will dismiss Technicolor's remaining state law counterclaim.

   IT IS THEREFORE ORDERED that TLC's motion to dismiss Technicolor's counterclaims be, and the same hereby is, GRANTED.  All pending dates before this court are hereby VACATED.

DATED:  July 27, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE